IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FRANK L. SANDOVAL,

        Plaintiff,

v.                                                     CIV 17-0641 JHR

NANCY A. BERRYHILL,
Acting Commissioner, Social
Security Administration,

        Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff Frank L. Sandoval's Motion to Reverse and Remand for Payment of Benefits or in the Alternative for Rehearing with Supporting Memorandum, filed December 13, 2017. *Doc. 20*. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned to conduct dispositive proceedings in this matter, including the entry of final judgment. *Docs. 9*, *11*, *15*. Having studied the parties' positions, the relevant law, and the relevant portions of the Administrative Record ("*AR*"), the Court denies Mr. Sandoval's Motion for the reasons set forth below.

## I)      INTRODUCTION

This Court's institutional role is to ensure that substantial evidence supports an administrative law judge's ("ALJ's") decision on the merits of a Social Security disability claim and that the correct legal standards were applied. This means that the Court can neither reweigh the evidence nor substitute its judgment for the ALJ's where there exists more than a mere scintilla of evidence supporting the decision. And, in the end, the Court must be guided by

principles of fairness and common sense, which render some errors by an ALJ harmless when considered in the aggregate. This is one of those cases.

Mr. Sandoval claims that the ALJ erred in weighing and applying two medical opinions. The Court agrees that the ALJ's reasoning for rejecting one of these opinions is unsupported; however, ultimately, this error is harmless because the ALJ accounted for the opinion's restrictions in formulating Mr. Sandoval's RFC. Mr. Sandoval also claims that the ALJ's assessment of his credibility was flawed. The Court agrees that the ALJ's discussion could have been clearer; however, ultimately, the ALJ's findings are entitled to deference and are supported by substantial evidence. Finally, Mr. Sandoval claims that his case must be remanded for assessment of evidence related to his hearing impairment, which was all but ignored by the ALJ and Appeals Council. The Court agrees that the ALJ erred in omitting discussion of Mr. Sandoval's audiological impairments when formulating his RFC; however, ultimately, the ALJ's omission was harmless because the ALJ identified a job Mr. Sandoval can perform that does not require any hearing. For these reasons, more fully explained below, the Court must uphold the ALJ's decision denying benefits in this case.

## II)     BACKGROUND

Mr. Sandoval filed an application with the Social Security Administration for disability insurance benefits under Title II of the Social Security Act on April 13, 2015. *AR* at 287-88. He alleged a disability onset date of April 10, 2015 due to "Post Traumatic Stress Disorder, Acquired Psychiatric Disorder, Major Depressive Disorder, Hypertension, Type 2 Diabetes, Coronary Artery Disease, Degenerative Left Knee, Hearing Loss, Right Knee anterior cruciate ligament tear, and Memory loss." *AR* at 213-14.

The Administration denied Mr. Sandoval's claims initially and upon reconsideration, and he requested a *de novo* hearing before an administrative law judge ("ALJ"). *AR* at 212-69. ALJ Lillian Richter held an evidentiary hearing on August 11, 2016. *AR* at 155-211. Pertinent here, Mr. Sandoval's attorney represented at the hearing that, although he has physical impairments, "[w]hat is keeping him from working is his PTSD and his depression." *AR* at 162. In fact, all of Mr. Sandoval and his wife's testimony at the hearing were focused on his mental impairments. *AR* at 162-201. And in questioning the Vocational Expert, Mr. Sandoval's attorney focused on the effects his mental impairments would have on his ability to interact with the public and supervisors. *AR* at 206-09.

On January 27, 2017, the ALJ issued an unfavorable decision, finding that Mr. Sandoval has not been under a disability from his alleged onset date through the date of her decision. *AR* at 132-154. Mr. Sandoval filed a "Request for Review of Hearing Decision/Order" on February 15, 2017. *AR* at 284-85. Mr. Sandoval also submitted additional medical records for the Appeals Council's review on April 7, 2017. *AR* at 6-129. Ultimately, the Appeals Council denied Mr. Sandoval's request for review on May 4, 2017. *AR* at 1-5. Pertinent here, it found that the evidence Mr. Sandoval submitted after the ALJ hearing did "not show a reasonable probability that it would change the outcome of the decision." *AR* at 2. Accordingly, the Appeals Council "did not consider and exhibit this evidence." *Id.* As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4).[1]

At Step One of the sequential evaluation process, the ALJ found that Mr. Sandoval has not engaged in substantial gainful activity since his alleged onset date. *AR* at 137. At Step Two, she determined that Mr. Sandoval has the severe impairments of "diabetes mellitus; polyneuropathy; coronary artery disease; obesity; plantar fasciitis of the left foot; a major depressive disorder; and post-traumatic stress disorder (PTSD)[.]" *AR* at 137. At Step Three, the ALJ concluded that Mr. Sandoval's impairments, individually and in combination, do not meet or medically equal the regulatory "listings." *AR* at 138-41.

When a claimant does not meet a listed impairment, the ALJ must determine his residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC is a multidimensional description of the work-related abilities a plaintiff retains in spite of his medical impairments. 20 C.F.R. § 404.1545(a)(1). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Mr. Sandoval retains the RFC to "perform a limited range of medium work as defined in 20 CFR 404.1567(c) as follows:"

---

[1] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

- The claimant is able to lift and/or carry 50 pounds occasionally and 25 pounds frequently and push and/or pull within these weight limitations;
- The claimant is able to sit and stand and/or walk six hours total out of an eight-hour workday;
- The claimant can frequently climb ramps and stairs and occasionally kneel, crouch, and crawl;
- The claimant can never climb ladders, ropes, or scaffolds;
- The claimant should avoid exposure to unprotected heights, moving mechanical parts, dust, odors, fumes, and pulmonary irritants;
- The claimant can frequently handle and finger bilaterally;
- The claimant is limited to simple, routine, and repetitive work and could not perform work in tandem with other employees and could not perform work at an assembly line production pace;
- The claimant can have occasional interaction with supervisors and co-workers and incidental interaction with the public; and
- The claimant is limited to making simple, work-related decisions in a workplace with few changes in the routine work setting.

*AR* at 141.

Employing this RFC at Steps Four and Five, and relying on the testimony of a Vocational Expert, the ALJ determined that Mr. Sandoval is unable to perform his past relevant work as a service manager and sales representative. *AR* at 148. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Mr. Sandoval can perform despite his limitations. *AR* at 149. Specifically, the ALJ determined that Mr. Sandoval retains the functional capacity to work as a dining room attendant, kitchen helper, or a blending tank tender helper. *AR* at 149. Accordingly, the ALJ determined that Mr. Sandoval is not disabled and denied benefits. *AR* at 150.

## III)  LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-*

*Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Racette v. Berryhill*, --- F. App'x ----, 2018 WL 2318089, at *1 (10th Cir. May 22, 2018) (unpublished) (quoting *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). The Court reviews the record as a whole, does not reweigh the evidence, and cannot substitute its judgment for that of the agency. *White v. Berryhill*, 704 F. App'x 774, 776 (10th Cir. 2017) (citing *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008)). "[M]erely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting [my] review, [I] should, indeed must, exercise common sense." *Keyes-Zachary*, 695 F.3d at 1166.

## IV) ANALYSIS

Mr. Sandoval argues that the RFC that the ALJ assigned to him "is contrary to the substantial evidence of record because the ALJ failed to weight the evidence properly and failed to consider limitations supported by the record," and because the ALJ's credibility analysis was flawed. *Doc. 20* at 1-2. He argues that "[t]hese errors tainted the ALJ's step five conclusion that Mr. Sandoval can work." *Id.* He also argues that "[t]he Appeals Council failed to remand for consideration of the evidence of tinnitus and hearing loss, which was contrary to law." *Id.* at 2. The Court addresses each argument in turn.

### A) The ALJ's weighing of the medical evidence is flawed; however, the error is harmless because giving greater weight to the opinions at issue would not have changed the result in this case.

Mr. Sandoval complains that two consulting doctors ascribed limitations that are inconsistent with the RFC that the ALJ assigned to him. The ALJ rejected one of these doctors' – Dr. Theresa Rosner-Salazar, Psy.D. – opinion outright,[2] reasoning that it was internally

---

[2] The ALJ afforded "little weight" to Dr. Rosner-Salazar's findings, thereby "effectively rejecting" them under Tenth Circuit law. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (equating "according little weight to"

inconsistent and contradicted by other evidence of record, including the opinion of Dr. John

Owen, Ph.D. On the other hand, the ALJ ascribed "great weight" to Dr. Owen's opinion,

reasoning that it was consistent with the record as a whole, including his findings on examination

and Mr. Sandoval's daily activities. Mr. Sandoval argues that these two doctors' opinions were

actually consistent in some respects, so the ALJ erred in rejecting Dr. Rosner-Salazar's

limitations in favor of Dr. Owen's. More importantly, Mr. Sandoval argues that the ALJ failed to

incorporate all of the limitations that Dr. Owen placed on him into the RFC. The Court, having

reviewed the evidence Mr. Sandoval and the ALJ relied on, disagrees.

"It is the ALJ's duty to give consideration to all the medical opinions in the record. . . .

[Sh]e must also discuss the weight [s]he assigns to such opinions." *Keyes-Zachary*, 695 F.3d at

1161 (citations omitted).

> When evaluating the opinion of any medical source, an ALJ must consider: (1)
> the length of the treatment relationship and the frequency of examination; (2) the
> nature and extent of the treatment relationship, including the treatment provided
> and the kind of examination or testing performed; (3) the degree to which the
> physician's opinion is supported by relevant evidence; (4) consistency between
> the opinion and the record as a whole; (5) whether or not the physician is a
> specialist in the area upon which an opinion is rendered; and (6) other factors
> brought to the ALJ's attention which tend to support or contradict the opinion.

*Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (citing *Goatcher v. U.S. Dep't of*

*Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995); 20 C.F.R. §§ 404.1527(c),

416.927(c)). "If an ALJ rejects an opinion, he 'must provide specific, legitimate reasons for

rejecting it.'" *Kellams*, 696 F. App'x at 917 (citing *Chapo*, 682 F.3d at 1291). With these

standards in mind, the Court turns to the two medical opinions at issue here.

The ALJ summarized Dr. Rosner-Salazar's findings as follows:

---

an opinion with "effectively rejecting" it); *Crowder v. Colvin*, 561 F. App'x 740, 742 (10th Cir. 2014) (citing *Chapo*
for this proposition); *Ringgold v. Colvin*, 644 F. App'x 841, 844 (10th Cir. 2016) (same).

Theresa Ann Rosner-Salazar, Psy.D., clinical psychologist, reported on August 18, 2015 that Mr. Sandoval displayed current PTSD symptoms that are in the severe range. He also had a major depressive disorder, moderate. The claimant indicated his PTSD symptoms have increased. He noted greater irritability, withdrawal, and anxiety, exacerbated after he lost his job in April 2015. He noted he tends to be hard on his children to the point where they feel afraid of him due to PTSD related anger and irritability. The claimant indicated continued deficits in his current psychosocial functioning, including continued difficulty with crowds, significant anger/irritability, and impaired impulse control, which has escalated into violent/aggressive behavior, increased social withdrawal and isolation, marital and family discord, and increased isolation, withdrawal and difficulty in establishing close relationships with others. Dr. Rosner-Salazar opined that the claimant's PTSD symptoms caused functional impairments that negatively "impact" his occupational functioning in a sedentary and physical work setting. She opined that the claimant has a moderate to severe interference with concentration and memory, a severe interference with mood and motivation, a severe interference with social interaction, and a moderate to severe interference with adaptability and stress tolerance. However, the mental status examination showed that despite having anxiety and anger, the claimant was alert and attentive and actively participated in group discussion. He denied suicidal or homicidal ideation. His mood was calm and positive with a congruent affect.

*AR* at 144-45. The ALJ then gave "little weight" to Dr. Rosner-Salazar's functional assessment, reasoning that it "is not consistent with or supported by the record as a whole, including the objective clinical findings (such as her own mental status examination), the consultative examination report by Dr. Owen . . . and the claimant's daily activities (including attending church, gardening, yardwork, hunting, and fishing)." *AR* at 145. Mr. Sandoval argues that these reasons are unsupported by substantial evidence. *See Doc. 20* at 13.

At the outset, the Court notes that the ALJ's primary reason for rejecting Dr. Rosner-Salazar's opinion – consistency with the record as a whole – is legitimate as a matter of law, *see Wells v. Colvin*, 727 F.3d 1061, 1072 (10th Cir. 2013) ("Inconsistency with the record as a whole, the basis on which the ALJ relied here, is in general a legitimate basis on which to discount or reject a medical opinion."); however, such a finding must be supported by specific references to the record. *See Lewis v. Berryhill*, 680 F. App'x 646, 647 (10th Cir. 2017)

(unpublished) ("The administrative law judge's second reason is too vague. The judge said that Dr. Muckala's opinion was inconsistent with the medical record. Which part of the record? The judge didn't say."); *see also Kellams*, 696 F. App'x at 917 (Holding that "the ALJ failed to specify 'other findings of significance,'" contrary to *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (observing that ALJ should "specifically highlight those portions of the record that were allegedly inconsistent")). Thus, the question is whether the ALJ's citations to the record are actually inconsistent with Dr. Rosner-Salazar's opined functional limitations.

The ALJ's first comparison is not supported by substantial evidence. The ALJ specifically references Dr. Rosner-Salazar's mental status examination findings as a reason to reduce the weight attributed to her opinion; but, as Mr. Sandoval points out, those findings were not actually made by Dr. Rosner-Salazar. *See Doc. 20* at 13 (arguing that, "contrary to the ALJ's description of the results of *an* MSE, Dr. Rosner-Salazar stated that Mr. Sandoval had a flat affect.") (emphasis added). In fact, the mental status examination findings that the ALJ cites are not Dr. Rosner-Salazar's, but those of Lisa T. Arciniega, Ph.D., during group therapy, rendered on August 11, 2015, a week prior to Dr. Rosner-Salazar's August 18, 2015, findings. *Compare AR* at 810 *with AR* at 811. To the contrary, Dr. Rosner-Salazar found Mr. Sandoval to have a depressed mood and flattened affect. *See AR* at 809-810. In other words, there is nothing inherently inconsistent between Dr. Rosner-Salazar's mental status examination findings and her conclusions.

The ALJ's next reason for rejecting Dr. Rosner-Salazar's opinion is that it is inconsistent with Dr. Owen's findings. *AR* at 145. However, the two doctors' opinions are not so inconsistent as to justify a complete rejection of Dr. Rosner-Salazar's assessment. *Compare AR* at 811 *with AR* at 1059. In fact, both agreed that Mr. Sandoval is limited with respect to his ability to interact

with people, and in his ability to adapt to changes in the workplace and deal with routine stress. *See id.* The only place that the opinions differ significantly is in Mr. Sandoval's ability to understand, remember, and carry out instructions (Dr. Owen even agrees with Dr. Rosner-Salazar that Mr. Sandoval's ability to persist at tasks is moderately limited). *See id.* Thus, the ALJ could not rely on Dr. Owen's opinion to completely reject Dr. Rosner-Salazar's.

Finally, the ALJ rejected Dr. Rosner-Salazar's opinion because it is allegedly inconsistent with Mr. Sandoval's activities of daily living. *AR* at 145. Specifically, she determined that his actions of attending church, gardening, yardwork, and hunting and fishing were inconsistent with Dr. Rosner-Salazar's opined limitations. *Id.* However, the Court fails to see how these activities, which are primarily solitary in nature (with the exception of attending church), contradict Dr. Rosner-Salazar's findings that Mr. Sandoval is limited in his ability to interact socially and to adapt/tolerate stress. *See AR* at 811. In fact, these same limitations were found by Dr. Owen, whose opinion the ALJ gave "great" weight. *AR* at 1059. In sum, the Court finds that the ALJ's rejection of Dr. Rosner-Salazar's opinion that Mr. Sandoval is limited socially and in his ability to cope with stress is not supported by substantial evidence.

The question is whether the ALJ's error in weighing Dr. Rosner-Salazar's opinion harmed Mr. Sandoval. "An ALJ's failure to discuss and weigh a medical source opinion is harmless error 'if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity.'" *Harrold v. Berryhill*, 714 F. App'x 861, 869 (10th Cir. 2017) (quoting *Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014)). Here, even assuming *arguendo* that Dr. Rosner-Salazar's opinion was entitled to the "great" weight that was afforded to Dr. Owen's, the result would be the same. As Mr. Sandoval admits, Tenth Circuit case law supports the notion that concentration and memory deficits can be accommodated by a restriction to

simple work. *See Doc. 20* at 10. Here, the ALJ went a step further, limiting Mr. Sandoval not only to "simple, routine, and repetitive work," but also restricting his interaction with others by precluding him from working in tandem with other employees. *AR* at 141. Moreover, the ALJ incorporated Dr. Rosner-Salazar's limitations in working with other people and in handling stress by limiting him to "occasional" interaction with coworkers and supervisors, "incidental" interaction with the public, and limiting him to making simple, work-related decisions in a workplace with few changes in the routine work setting." *Id.*

Where there are no inconsistencies between a medical opinion and a claimant's RFC, any error by the ALJ in weighing such an opinion are harmless. *See Keyes-Zachary*, 695 F.3d at 1161–62 (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). Here, the ALJ incorporated into Mr. Sandoval's RFC Dr. Rosner-Salazar's limitations that were supported by record evidence and which were consistent with Dr. Owen's opinion. While the Court would have obviously preferred that the ALJ take greater care in weighing Dr. Rosner-Salazar's opinion, the fact remains that Mr. Sandoval's RFC reflects the limitations she and Dr. Owen opined to.

Of course, Mr. Sandoval argues that this is not the case. To the contrary, he argues, the ALJ failed to give "great weight" to Dr. Owen's findings of moderate to marked limitations in Mr. Sandoval's ability to interact with supervisors or co-workers, or the limitation in the ability to respond appropriately to usual work situations. *See Doc. 20* at 15. Citing to the Program Operations Manual System (POMS),[3] Mr. Sandoval argues that "[t]he ALJ's limitation of Mr.

---

[3] As the Tenth Circuit explained in *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished), "[t]he POMS is 'a set of policies issued by the Administration to be used in processing claims.'" *Id.* (quoting *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999)). The Court will "defer to the POMS provisions unless … they are 'arbitrary, capricious, or contrary to law.'" *Id.* (quoting *Ramey v. Reinertson*, 268 F.3d 955, 964 n. 2 (10th Cir. 2001)).

Sandoval to occasional interactions with supervisors and co-workers does not accommodate a marked limitation." *Id.*

Under the POMS, a claimant should be denoted as "moderately limited" in a functional capacity "when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." POMS DI 24510.063. Likewise, a medical provider should report that a claimant's ability to function is "markedly limited" "when the evidence supports the conclusion that the individual cannot usefully perform or sustain the activity." *Id.* Here, Dr. Owen opined that Mr. Sandoval is moderately to markedly impaired in his ability to interact with supervisors, co-workers, and the public, and to respond appropriately to usual work situations and to changes in a routine work setting. *AR* at 1059. The question is whether the ALJ's RFC adequately encompassed these moderate to marked impairments.

The Court finds that it does. The ALJ limited Mr. Sandoval to "occasional" interactions with co-workers and supervisors and "incidental" interaction with the public. *AR* at 141. The term "occasionally," when used in a RFC, "means that the activity or condition occurs at least once up to one-third of an 8-hour workday." POMS DI 25001.001. While the Court agrees that a finding of a "marked" impairment in Mr. Sandoval's ability to interact with people would ordinarily preclude *any* interaction, here, the limitation is moderate to marked, not strictly marked. *See Doc. 22* at 12. Thus, while Mr. Sandoval's abilities in these areas are limited, they are not completely absent. *See* 20 C.F.R. § 404.1520a(c)(4) (stating that only an "extreme" limitation "represents a degree of limitation that is incompatible with the ability to do any gainful activity."). As such, the Court agrees with the Commissioner that "[b]y restricting [Mr. Sandoval] to no work in tandem with other employees, and limiting him to only occasional interaction with supervisors and co-workers and incidental interaction with the public, the ALJ's

RFC finding was consistent with Dr. Owen's assessed moderate to marked social limitations." *Doc. 22* at 12; *see, e.g.*, *Chavez v. Colvin*, 654 F. App'x 374, 375 (10th Cir. 2016) (unpublished) (finding that a moderate limitation in the ability to respond appropriately to criticism from supervisors was adequately encompassed in a RFC to only occasional and superficial contact with coworkers); *Orso v. Colvin*, 658 F. App'x 418, 420 (10th Cir. 2016) (finding that a moderate difficulty in social functioning was encompassed by a limitation to occasional contact with coworkers, supervisors, and the general public).

In sum, the ALJ erred in weighing Dr. Rosner-Salazar's opinion. However, the error is harmless in this case because the ALJ's RFC is consistent with the limitations to which she opined. As such, the Court will not reverse the ALJ for her treatment of Drs. Rosner-Salazar or Owen's opinions.

**B) The ALJ's credibility analysis could have been more explicit; however, ultimately, it is supported by substantial evidence.**

Mr. Sandoval argues that the ALJ erred by finding him less than fully credible as to the limiting effects of his impairments. *See Doc. 20* at 16-18. Mr. Sandoval then creates a strawman, arguing that "[i]nstead of competent and current medical evidence from doctors who examined and treated Mr. Sandoval, the ALJ used Mr. Sandoval's description of 'daily activities' to find him not credible." *Id.* at 17. This is not, however, an accurate portrayal of the ALJ's reasons for finding Mr. Sandoval less than fully credible concerning the limiting effects of his symptoms. Moreover, "[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *White v. Berryhill*, 704 F. App'x 774, 778 (10th Cir. 2017) (unpublished) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010)). Having reviewed the evidence first hand, the Court finds that substantial

evidence, which is "more than a scintilla, but less than a preponderance," *Lax v. Astrue*, 489 F.3d

1080, 1084 (10th Cir. 2007), supports the ALJ's finding in this case.

The ALJ first summarized Mr. Sandoval's testimony at the hearing, as follows:

The claimant believes his PTSD began in 1991 during Operation Desert Storm. There was a raid and the cameras were extremely close. There was a truck with men in that truck. As the raid took place, he could see bodies being killed by the bomb. At the time he watched that, it struck him that people were actually dying. He saw bombing raids every single day. He was on station for approximately 115 days. He felt that his life was being threatened. He came back from the war being very secluded, very sad, and scared. He no longer trusts anyone. He has lost everyone except for his wife, son, and daughter. This included lifelong friends. Every night, he sleeps with a high-powered light next to him. He engages in constant surveillance. He is extremely angry. At the utility trailer, he had multiple fistfights with employees. Shouting matches were the norm. In 2013, he gave mouth-to-mouth resuscitation to an employee who died of a heart attack. He was looking death in the face again. His stress level at the time was off the charts; it was exacerbating his PTSD. He sought less stressful employment in December 2013. He wanted a job where he was just by himself.

Since 2015, he has not been able to handle simple instructions well at all. He used to do all of his own car maintenance but now he cannot change a light bulb on the car without watching a video and having his son help him. He cannot concentrate because his mind wants to do 150 other things. His concentration is horrible. He has difficulty completing simple tasks. He will retreat to his garden, which is his "safe haven." He cannot work because he is easily distracted and because of his anger and mood swings. He did not think he could do a job working by himself with very repetitive tasks.

*AR* at 142. The ALJ then made the following finding:

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective and other evidence.

*Id.* This boilerplate language would ordinarily be insufficient to meet the Commissioner's

burden, because, as Plaintiff rightly points out, it is not clear exactly what "objective and other

evidence" the ALJ is referring to. *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). However, the Tenth Circuit has held that the "use of such boilerplate is problematic only when it appears 'in the absence of a more thorough analysis.'" *Keyes-Zachary*, 695 F.3d at 1170 (quoting *Hardman*, 362 F.3d at 679). Here, the ALJ followed the requirements of *Keyes-Zachary* by spending the next six pages of her decision discussing Mr. Sandoval's medical and psychiatric treatment, the statements of his wife in support of his application, the medical opinions in the file, and Mr. Sandoval's daily activities. *See AR* at 143-48. Immediately following this discussion, the ALJ cites the relevant regulation (20 C.F.R. § 404.1529(c)(3)), and discusses, in two paragraphs, evidence from Mr. Sandoval's medical treatment and daily activities that detracts from the weight of his alleged symptoms and resultant limitations. *See AR* at 147-148. This appears to be sufficient under recent Tenth Circuit case law. *See, e.g.*, *Scott v. Berryhill*, 695 F. App'x 399, 404–05 (10th Cir. 2017) ("These findings are scattered throughout her decision. When considered together, they demonstrate the ALJ's compliance with her duty to evaluate and discuss factors relevant to the claimant's credibility.").

As the Tenth Circuit recently summarized, when assessing a claimant's credibility:

> [a]n ALJ must consider such factors as a claimant's daily activities; attempts to find relief; the type, effectiveness and side effects of medication; and factors that precipitate and aggravate the symptoms. *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004). An ALJ must do more than merely recite the relevant factors, but must give reasons for the findings linked to the evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (brackets and internal quotation marks omitted). But we "do not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's subjective complaints, the dictates of *Kepler* are satisfied." *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

*Watts v. Berryhill*, 705 F. App'x 759, 763 (10th Cir. 2017) (unpublished). Contrary to Mr. Sandoval's position, Court finds that this standard was met in this case for two reasons.

First, the ALJ did not rely solely on Mr. Sandoval's daily activities. Rather, she discussed medical records wherein Mr. Sandoval "indicated that prazosin 3 mg at bedtime has helped his nighttime anxiety and that he was satisfied with the current response. He discussed in the group how he was learning to manage situations better and that he was more open with his children and improving relationships with them. He reported no side effects from psychiatric medication." *AR* at 147. Thus, the ALJ's discussion touched upon the regulatory factors stated in 20 C.F.R. 404.1529(c) (requiring adjudicators to consider, *inter alia*, objective medical evidence, a claimant's daily activities, the type, dosage, effectiveness, and side effects of any medications, and treatment other than medication and its effectiveness when evaluating a claimant's symptoms).

Second, the ALJ's consideration of Mr. Sandoval's daily activities is supported by substantial evidence. Mr. Sandoval complains that the ALJ misrepresented the nature of his daily activities, arguing that "the specific facts behind the generalities paint a very different picture from the one painted by the ALJ." *Doc. 20* at 17 (quoting *Krauser v. Astrue*, 638 F.3d 1324, 1332 (10th Cir. 2011)). This argument would have more force if Mr. Sandoval did not admit in his briefing that he has no difficulty in completing personal care and in performing gardening chores around his home. *Id.* Moreover, the ALJ did not misrepresent Mr. Sandoval's daily activities. In her decision, the ALJ summarized Mr. Sandoval's daily activities as follows:

> The claimant has been able to participate in church as well as engage in hunting and fishing. He has also engaged in gardening as a pastime (Exhibit 4-F, p. 11). The claimant also told his provider that he prepped several bags of chile and that he enjoyed this activity. He grew his own chile (Exhibit 8-F, p. 150). The claimant's wife reported that the claimant loves to work in the yard and go hunting and fishing by himself. He does yardwork almost daily and well. In addition, he goes fishing five times per year and does "ok." He goes hunting once a year and does "ok" (Exhibit 6-E, p. 5). She also reported that the claimant goes to church weekly but that he gets nervous because there are "a lot of people" (Exhibit 6-E, p. 5). His wife pointed out that yardwork and gardening make the

> claimant happy (Exhibit 6-E, p. 8). The claimant told Dr. Owen that he spends most of his day working in the garden and yard. He likes being in nature by himself. He plays with his dogs and may see friends once or twice per month (Exhibit 13-F, p.2).

*AR* at 148. The Court has reviewed the exhibits that the ALJ cited in support of these findings, and concludes that the ALJ's summary is supported by substantial evidence.

For example, the ALJ cited Exhibit 4F at page 11, which is a Psychiatry Individual Note in which Mr. Sandoval's background included admissions that he "[p]articipates in church, watching sports and hunt/fishing (has guns for hunting but keeps locked and unloaded). Used to garden to relax, recently started this, preparing for spring." *AR* at 812. Next, the ALJ cited Exhibit 8-F, p. 150, which is a Progress Notes from a psychiatry visit wherein Mr. Sandoval told Dr. Tabet that he "[p]repped several bags of chile, enjoys this (grows his own)." *AR* at 976. Next, the ALJ cites Mr. Sandoval's wife's function report, Exhibit 6-E, pp. 5, 8, in which she reported that [h]e loves to work in the yard. Go Fishing and Hunting by himself." *AR* at 382. Mrs. Sandoval further reported that Mr. Sandoval works in the yard "[a]lmost daily & well" and that he fishes "5 times a year and does OK. Hunting = once a year and does OK." *Id.* When asked to describe Mr. Sandoval's social activities, Mrs. Sandoval reported that he goes to church on Sundays and to doctor appointments on a biweekly basis. She indicated that he gets nervous in church because of the amount of people, but that he does not need accompaniment to doctor's appointments because they are "one-on-one." *Id.* When asked for further additional information pertaining to Mr. Sandoval's hobbies and interests, Mrs. Sandoval stated that "[y]ard work/gardening makes him happy. It is his way of taking care of the family. He prefers to be by himself. He does this hobby well. Our dogs also seem to help him relax." *AR* at 385. Finally, the ALJ referenced Dr. Owen's consultative examination report, where he reported the following with regard to Mr. Sandoval's "daily functioning:"

> Mr. Sandoval rises between 6:00 AM and 9:00 AM. He spends most of his day working in the garden and yard. He feels at peace in "my sanctuary". He likes being by himself in nature. He does play with his dogs. He has very few friends. He may see friends once or twice per month. He watches television in the evenings or at night but not during the day. He is in bed by 10:00 PM and asleep by 1:00 AM or 2:00 AM. His sleep is restless. He has nightmares and wakes up frequently.

*AR* at 1058. In sum, this is not a case where the ALJ exaggerated Mr. Sandoval's daily activities. Rather, she essentially quoted verbatim portions of the record. To the extent that Mr. Sandoval points to other evidence in the record in support of his symptoms and argues that "[n]o doctor has doubted the sincerity of [his] reports of symptoms and the limitations therefrom[,]" *Doc. 20* at 17, he "is essentially asking this court to impermissibly reweigh the evidence and improperly substitute [my] judgment for the Commissioner's, which [I] may not do." *Watts*, 705 F. App'x at 764.

"In sum, the ALJ's credibility assessment, while perhaps not perfect, is supported by substantial evidence." *Scott v. Berryhill*, 695 F. App'x 399, 406 (10th Cir. 2017) (unpublished). As such, the Court will not reverse the ALJ on this ground.

**C)** **Mr. Sandoval has failed to show harmful error in the Appeals Council's decision to affirm the denial of his claim.**

As mentioned, Mr. Sandoval submitted additional evidence to the Appeals Council after the ALJ denied his claim. *See AR* at 12-133. This evidence consisted of 124 additional pages of records from the Veteran's Administration dated December 22, 2014 to March 15, 2017. *Id.* The Appeals Council found that "this evidence does not show a reasonable probability that it would change the outcome of the decision" and, therefore, "did not consider and exhibit this evidence." *AR* at 2. Mr. Sandoval now argues that these records, "dated prior to the ALJ Decision relate to [his] hearing impairment." *Doc. 20* at 18. Mr. Sandoval complains that the evidence confirmed records that were already before the ALJ (which she ignored), indicating that he had mild

hearing loss in his left ear. *Id.* at 19. And, in the subsequent records, he is diagnosed with bilateral sensorineural hearing loss. *AR* at 72. Mr. Sandoval argues that his hearing loss should have been incorporated into his RFC and that it precludes his performance of the three jobs identified by the Vocational Expert and relied upon by the ALJ in denying benefits. *Doc. 20* at 19.

The Commissioner responds that Mr. Sandoval expressly disavowed the notion that his physical impairments were preventing him from working, and that he should be bound by these assertions. *See Doc. 22* at 14. The Court agrees that it is unfair as a matter of principle for a claimant to claim no physical impediments before an ALJ, and then the Appeals Council, only to sandbag the commissioner upon defeat with a new impairment. *See AR* at 162 ("What is keeping him from working is his PTSD and his depression"); 164 ("our claim really is focusing on the depression and the PTSD"); 425 (representative brief submitted by Mr. Sandoval's prior counsel wherein he did "not challenge the portion of the decision involving his physical RFC."). While the Court is cognizant that it was Mr. Sandoval's counsel who made these assertions, ordinarily a party is bound by his attorney's actions, *see, e.g.*, *Bejar v. McDonald*, 601 F. App'x 628, 631 (10th Cir. 2015) (unpublished) ("A litigant is bound by his attorney's actions."); *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) (discussing that, in the context of developing the record, "such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation."), and the Court is tempted to hold Mr. Sandoval to his attorney's representations in this case.

However, ultimately, the Court will not fault Mr. Sandoval for his attorney's strategic decision, for two reasons. First, in his initial application, Mr. Sandoval clearly asserts "Hearing

Loss" as a problem that limits his ability to work. *See AR* at 350. Second, it is well-established that an ALJ is not entitled to ignore an impairment when formulating a claimant's RFC, even an impairment that the ALJ has found to be non-severe. *See* 20 C.F.R. §§ 404.1545(d) ("Some medically determinable impairments, such as …impairment(s) of … hearing or other senses … may cause limitations and restrictions which affect other work-related abilities. If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your residual functional capacity."); 404.1545(e) ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."); SSR 96-8P, 1996 WL 374184 at *6 ("In assessing RFC with impairments affecting hearing or speech, the adjudicator must explain how the individual's limitations would affect his or her ability to communicate in the workplace."). In this case, however, the ALJ failed to even discuss Mr. Sandoval's hearing loss in her decision, much less when formulating his RFC. Thus, the question is whether the ALJ's RFC, and subsequent finding of disability, remains supported by substantial evidence.

In conducting this analysis the Court is guided by *O'Dell v. Shalala*, 44 F.3d 855 (10th Cir. 1994), as interpreted by *Vallejo v. Berryhill*, 849 F.3d 951 (10th Cir. 2017). Under these two cases, this Court's "only option" when presented with a case like the one before it is to conduct a substantial evidence review by assessing the entire agency record, including the newly submitted evidence, to determine whether the Commissioner's final decision is supported by substantial evidence. *Vallejo*, 849 F.3d at 956. Under this standard, the Court is confident that the ALJ committed an error in ignoring Mr. Sandoval's hearing impairment when formulating his RFC. As Mr. Sandoval rightly points out (and the Commissioner does not dispute), two of the three jobs identified by the ALJ that Mr. Sandoval can allegedly perform despite his impairments

require hearing at least up to 1/3 of the time. *See* DOT 318.687-010, 1991 WL 672755 (Kitchen Helper); DOT 311.677-018, 1991 WL 672696 (Dining Room Attendant); *Doc. 22* at 14-16. Thus, the Court cannot be certain that the ALJ's failure to include any hearing impediments in Mr. Sandoval's RFC was harmless as to these two jobs.

The Commissioner nonetheless responds that the ALJ identified a third job – blending-tank tender helper – that does not require hearing, and, so, the ALJ's decision remains supported by substantial evidence, notwithstanding the newly submitted evidence or her failure to address Mr. Sandoval's hearing loss in his RFC. *See Doc. 22* at 14-16. The Commissioner's point is well taken, for this job does not require hearing according to the Dictionary of Occupational Titles. *See* DOT 520.687-066, 1991 WL 674063 (Blending-Tank Tender Helper). Under pertinent Tenth Circuit case law, this job, which the Vocational Expert testified makes up approximately 400,000 jobs in the national economy, exists in "significant numbers" for the purpose of denying benefits under Step Five of the sequential evaluation process. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). As such, any error by the ALJ in failing to include hearing loss in Mr. Sandoval's RFC, and the Appeals Council in refusing to consider his additional evidence, is harmless. *See, e.g.*, *Jones v. Berryhill*, 720 F. App'x 457, 459 (10th Cir. 2017) (unpublished) ("Jones hasn't argued that his vision impairment prevents him from performing the dishwasher job, and the ALJ found that there were 550,000 such jobs available in the national economy. Jones isn't under a disability if he can perform other kinds of work that exists in the national economy "*in significant numbers*." 42 U.S.C. § 423(d)(2)(A) (emphasis added). 550,000 jobs is significant. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (noting that this court has found "only 152,000 jobs in the national economy" to be "significant" (internal quotation marks omitted))."); *Ryan v. Colvin*, CIV 15-0740, 2016 WL 8230660 at *14 (D.N.M. 2016)

(performing a similar analysis where two of three jobs were inconsistent with a claimant's RFC preventing her from working around moving parts, but a third was not).

Mr. Sandoval argues that reasoning leading to this conclusion is impermissibly *post hoc*. *Doc. 23* at 5. The Court is not persuaded. Published Tenth Circuit opinions permit a reviewing Court to salvage an administrative decision where it can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). And the Tenth Circuit itself has applied this analysis in several cases. *See, e.g.*, *Raymond*, 621 F.3d at 1274 ("Even assuming without deciding that he is unable to work as a sales attendant or office helper, there is no colorable dispute that substantial record evidence supports the ALJ's conclusion that he can work as a rental clerk."); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) ("[T]he case at hand is different from both *Allen* and *Trimiar*. Here, the VE testified that 6,000 electronics assembler jobs existed regionally and 72,000 existed nationally and that 5,000 clerical mailer jobs existed regionally and 80,000 nationally. Thus, even if we consider only these two jobs out of the four considered by the ALJ, there were still 11,000 jobs available regionally and 152,000 jobs available nationally. Here, we do not believe any reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country."); *Bainbridge v. Colvin*, 618 F. App'x 384, 391 (10th Cir. 2015) ("Excluding the cutter/paster and document-preparer jobs leaves 500,000 surveillance-system-monitor jobs in the national economy. Any reasonable trier of fact would be compelled to conclude that 500,000 is a significant number of jobs for purposes of a step-five determination."); *Duncan v. Colvin*, 608 F. App'x 566, 577 (10th Cir. 2015) ("We agree that the sedentary hypothetical question to the VE did not include the limitation to 'superficial contact

with coworkers, supervisors, and the public.' We conclude the omission does not require reversal, however, because any error was harmless.").

## V)   CONCLUSION

It must be remembered that "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). In this case, Mr. Sandoval has raised several valid objections concerning the ALJ's treatment of the evidence. However, in the end, those objections lack merit, because the ALJ's errors did not harm Mr. Sandoval. That is to say, the Court, having carefully and meticulously reviewed the record as it must, finds the ALJ's decision denying benefits in this case to be supported by substantial evidence.

Wherefore, Plaintiff's Motion (*Doc. 20*) is hereby denied. A Final Judgment pursuant to Federal Rule of Civil Procedure 58 will be entered concurrently.

SO ORDERED.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent